IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CARL R. CALDWELL
and GAYE A. CALDWELL                                                    PLAINTIFFS

v.                               Case No. 1:16-cv-01015

UNITED STATES OF AMERICA                                                  DEFENDANT

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The parties to this case, through their respective counsel, have submitted Joint Proposed Findings of Fact and Conclusions of Law. This case is a quiet title action; however, the disputed property line and use of the land in question has been established to the mutual satisfaction of the parties. To that end, the parties ask the Court to adopt their Joint Proposed Findings of Fact and Conclusions of Law. Upon consideration, the Court finds that the parties' Joint Findings of Fact and Conclusions of Law to be a just and equitable resolution to this case. Accordingly, the Court finds as follows:

## FINDINGS OF FACT

1.  E. A. Caldwell and Berdie R. Caldwell, husband and wife, were the owners of the Northwest Quarter (NW 1/4) AND the North Half of the Southwest Quarter (N 1/2 SW 1/4), of Section 27, Township 18 South, Range 5 West, containing 240 acres more or less, in Ashley County, Arkansas (the "Caldwell Property").

2.  E. A. Caldwell died in 1960. On April 29, 1986, Berdie R. Caldwell, widow of E. A. Caldwell, deeded the property described in paragraph one to Carl R. Caldwell. Berdie R. Caldwell subsequently died on February 3, 1987.

3. On May 23, 2007, Carl R. Caldwell, for the purpose of creating an estate by the entireties, deeded the property described in paragraph one to Carl R. Caldwell and Gaye A. Caldwell, his wife.

4. Plaintiffs own the Caldwell Property.

5. On July 21, 1964, Georgia-Pacific Paper Corporation sold to William B. deYampert (in his individual capacity) and John B. Currie, William B. deYampert and Thomas F. Scannell, as Trustees of the deYampert-Currie Trust Estate, approximately 7,907.52 acres of land in Ashley County, Arkansas. Tract 32 of the purchase was Section 28, Township 18 South, Range 5 West, consisting of 640 acres, which adjoins the Caldwell Property.

6. The property described in Paragraph 5 was not surveyed prior to the sale.

7. On February 21, 1979, the deYampert-Currie Trust Estates, acting by John B. Currie and William B. deYampert, Trustees, sold to William B. deYampert approximately 1,200 acres of land, which included Section 28, Township 18 South, Range 5 West, consisting of 640 acres, which adjoins the Caldwells' property.

8. The property described in Paragraph 7 was not surveyed prior to the sale.

9. On March 27, 1992, the U.S. Fish and Wildlife Service ("FWS"), an agency of the U.S. Department of the Interior, purchased 603 acres in fee simple for inclusion in the Overflow National Wildlife Refuge ("Refuge") from William B. deYampert and Ann U. deYampert. The property is described as follows:

> All of Section 28, Township 18 South, Range 5 West, less and except a parcel described as beginning at the Northwest corner of Section 28, thence running East 18 ½ chains to center line of a ditch; thence running Southwesterly along center line of ditch to the West line of said Section 28, thence running North for 40 chains, more or less, back to the point of beginning, containing 603 acres, more or less.

(the "FWS Property").

10. The FWS Property was not surveyed prior to the sale.

11. Freddie Scroggins, in his deposition on June 7, 2017, testified that his dad started leasing the Caldwell Property in about 1966 or 1967 from Carl R. Caldwell's mother, Berdie R. Caldwell, and the family continued to farm the Caldwell Property until 1989. Initially, they ran cows on the Caldwell Property. Scroggins testified that there was a fence that ran on the east side of the road and the light poles are now located where the fence used to be. Scroggins also testified that growing up they took their feed, hay, and stuff down the road. In addition, Scroggins put in two wells on what he thought was the Caldwell Property. These wells are located east of the road, but in the area that is in dispute. At the time Scroggins drilled the wells they thought they were on the Caldwell Property. Scroggins considered the light poles to be the boundary of the Caldwell Property and the road was on deYampert's property.

12. Carl R. Caldwell testified in his deposition that there was a fence that went around the entire 240 acres of the Caldwell Property to keep cows and hogs out of it so they could farm. He stated that the fence was there before the deYamperts purchased the property. Once the deYamperts purchased the property they built the road beside the fence.

13. Ray Woods, Engineering Equipment Operator, has been employed at the Refuge for 28 years. Woods stated that there were signs and paint on the power poles that designated the boundary of the Refuge when he first arrived.

14. In 2014, the FWS noticed discrepancies in the boundary of the FWS Property and ordered a survey. The FWS contracted with Ruble Riggs and Shotts, LLC, to restore, establish, mark and perpetuate the corners and lines of Section 28, T18S R5W. The survey was performed in August 2015 and was completed on or about September 4, 2015.

15. The survey revealed that the actual boundary line between the FWS Property and the Caldwell property, as described by both deeds, extended into what the Caldwells considered a portion of their field from approximately 64.1 feet to 85 feet.

16. Ruble Riggs and Shotts, LLC has subsequently surveyed the property between the actual boundary line and the power poles and provided the following description:

> A tract of land being part of Section 28, Township 18 South, Range 05 West of the Fifth Principal Meridian, Ashley County, Arkansas, as shown on the General Land Office plat from the Surveyor's Office in Little Rock, Arkansas dated September 30th, 1842, being more particularly described as follows:
>
> BEGINNING at a set 3/4-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" set by Robert S. Shotts, PLS 1208, having Arkansas State Plane (South Zone 0302), NAD 83 (2011) (EPOCH: 2010.0000), U.S. Foot Coordinates North: 1475882.380, East: 1430010.440 and Latitude: 33 degrees 06 minutes 55.80 seconds, Longitude: 91 degrees 36 minutes 56.55 seconds;
> Thence on a grid bearing along the east line of said Section 28 South 00 degrees 29 minutes 59 seconds East a distance of 3974.89 feet to a set 3/4-inch by 36-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" at the Southeast corner of the North Half of the Southeast Quarter of said Section 28;
> Thence along the South line of said North Half of the Southeast Quarter North 88 degrees 36 minutes 46 seconds West a distance of 81.88 feet to a set 3/4-inch by 36-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service";
> Thence North 00 degrees 16 minutes 53 seconds West a distance of 3974.56 feet to a set 3/4-inch by 36-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" on the north line of said Section 28;
> Thence South 88 degrees 29 minutes 54 seconds East a distance of 66.73 feet along the north line of said Section 28 to the place of beginning.
> Said tract contains 6.78 Acres.

17. In addition, Ruble Riggs and Shotts, LLC, also surveyed the field road, and provided the following description:

A tract of land being part of Section 28, Township 18 South, Range 05 West of the Fifth Principal Meridian, Ashley County, Arkansas, as shown on the General Land Office plat from the Surveyor's Office in Little Rock, Arkansas dated September 30th, 1842, being more particularly described as follows:

COMMENCING at a set 3/4-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" set by Robert S. Shotts, PLS 1208, having Arkansas State Plane (South Zone 0302), NAD 83 (2011) (EPOCH: 2010.0000), U.S. Foot Coordinates North: 1475882.380, East: 1430010.440 and Latitude: 33 degrees 06 minutes 55.80 seconds, Longitude: 91 degrees 36 minutes 56.55 seconds;

Thence on a grid bearing along the north line of said Section 28 North 88 degrees 29 minutes 54 seconds West a distance of 66.73 feet to a set 3/4-inch by 36-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" for the point of BEGINNING;

Thence South 00 degrees 16 minutes 53 seconds East a distance of 3974.56 feet to a set 3/4-inch by 36-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" on the south line of the North Half of the Southeast quarter of said Section 28;

Thence North 88 degrees 36 minutes 46 seconds West a distance of 22.32 feet along the south line of said of said North Half of the Southeast Quarter to a set 5/8-inch by 24-inch rebar on the centerline of a road;

Thence continuing North 88 degrees 36 minutes 46 seconds West a distance of 10.01 feet;

Thence North 01 degrees 24 minutes 45 seconds West a distance of 562.30 feet;

Thence North 00 degrees 09 minutes 21 seconds West a distance of 309.17 feet;

Thence North 03 degrees 23 minutes 11 seconds East a distance of 111.84 feet;

Thence North 00 degrees 46 minutes 39 seconds West a distance of 378.98 feet;

Thence North 04 degrees 59 minutes 51 seconds West a distance of 90.84 feet;

Thence North 06 degrees 41 minutes 34 seconds East a distance of 145.79 feet;

Thence North 00 degrees 16 minutes 01 seconds West a distance of 878.35 feet

Thence North 00 degrees 22 minutes 47 seconds West a distance of 942.56 feet;

    Thence North 00 degrees 02 minutes 38 seconds East a distance of 398.31 feet;
    Thence North 05 degrees 46 minutes 21 seconds West a distance of 124.21 feet;
    Thence North 17 degrees 19 minutes 37 seconds East a distance of 36.18 feet to the North line of said Section 28;
    Thence South 88 degrees 29 minutes 54 seconds East a distance of 10.39 feet along said North to a set 5/8 inch by 24 inch rebar on the centerline of a road;
    Thence continuing along said North line South 88 degrees 29 minutes 54 seconds East a distance of 18.33 feet to the point of beginning.
Said tract contains 3.03 Acres.

## **CONCLUSIONS OF LAW**

1. The Court has jurisdiction pursuant to the Quiet Title Act, 28 U.S.C. § 2409(a).

2. A plaintiff may base a quiet title claim on a claim of adverse possession that has ripened into title prior to the United States claiming an interest in the property if adverse possession was complete prior to the time the United States acquired its title. *Burlison v. United States*, 533 F.3d 419, 428 (6th Cir. 2008); *Wingers v. Sweet*, 190 Fed. Appx. 629, 633 (10th Cir. 2006); *United States v. Oglesby*, 163 F.Supp. 203, 205 (W.D. Ark. 1958); *Stull v. United States*, 61 F.2d 826, 828 (8th Cir. 1932). The same also holds true of boundary lines by acquiescence prior to any conveyance to the United States. *Williams v. United States Department of the Interior, National Park Service*, 2012 WL 6554265 * 5 (W.D. Ark. 2012).

3. Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, it becomes the boundary by acquiescence. *Rabjohn v. Ashcrat*, 252 Ark. 565, 570, 480 S.W.2d 138, 141 (1972); *Palmer v. Nelson*, 235 Ark. 702, 361 S.W.2d 641 (1962); *Clark v. Casebier*, 92 Ark. App. 472, 476, 215 S.W.3d 684, 686 (2005).

4. A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line, and in such circumstances, the adjoining owners and their grantees are precluded from claiming that the boundary so recognized and acquiesced in is not the true one, although it may not be. *Rabjohn*, 252 Ark. at 570-71, 480 S.W.2d at 141; *see also Clark*, 92 Ark. App. at 476, 215 S.W.3d at 686.

5. In order to acquire an easement by prescription, there must be a continuous use for seven years known by the owner. *Baker v. Armstrong*, 271 Ark. 878, 880, 611 S.W.2d 743, 745 (1981).

6. The holder of a prescriptive easement has the responsibility for maintenance of the easement in a manner and to an extent reasonably calculated to promote the purposes for which it was created or acquired, causing neither an undue burden upon the servient estate nor an unwarranted interference with the rights of common owners or the independent rights of others. However, a prescriptive easement is not a license to make major alterations in the land. Further, once the character of an easement is fixed, no material alterations can be made in physical conditions which are essential to the proper enjoyment of the easement except by agreement. *Foran v. Molitor Ford*, 279 Ark. 121, 124, 649 S.W.2d 177, 178 (1983); *Southwestern Bell Telephone Co. v. Davis,* 247 Ark. 381, 384, 445 S.W.2d 505, 506 (1969), *Craig v. O'Bryan,* 227 Ark. 681, 686-687, 301 S.W.2d 18, 21-22 (1957).

## **CONCLUSION**

Based on the above findings of fact and conclusions of law, the Court finds as follows:

1. The Court finds that although the true boundary extends into the Caldwell Property approximately 70 feet, prior to the FWS Property being purchased by the United States, a boundary

by acquiescence was established where the old fence line used to be and the power line poles are currently located.

2. The Court further finds that the true and common boundary line shall be established as follows:

> A tract of land being part of Section 28, Township 18 South, Range 05 West of the Fifth Principal Meridian, Ashley County, Arkansas, as shown on the General Land Office plat from the Surveyor's Office in Little Rock, Arkansas dated September 30th, 1842, being more particularly described as follows:
>
> BEGINNING at a set 3/4-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" set by Robert S. Shotts, PLS 1208, having Arkansas State Plane (South Zone 0302), NAD 83 (2011) (EPOCH: 2010.0000), U.S. Foot Coordinates North: 1475882.380, East: 1430010.440 and Latitude: 33 degrees 06 minutes 55.80 seconds, Longitude: 91 degrees 36 minutes 56.55 seconds;
> Thence on a grid bearing along the east line of said Section 28 South 00 degrees 29 minutes 59 seconds East a distance of 3974.89 feet to a set 3/4-inch by 36-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" at the Southeast corner of the North Half of the Southeast Quarter of said Section 28;
> Thence along the South line of said North Half of the Southeast Quarter North 88 degrees 36 minutes 46 seconds West a distance of 81.88 feet to a set 3/4-inch by 36-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service";
> Thence North 00 degrees 16 minutes 53 seconds West a distance of 3974.56 feet to a set 3/4-inch by 36-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" on the north line of said Section 28;
> Thence South 88 degrees 29 minutes 54 seconds East a distance of 66.73 feet along the north line of said Section 28 to the place of beginning.
> Said tract contains 6.78 Acres.

3. The surveyed common property line will and shall ever be hereafter, the common boundary line between the properties owned by the parties hereto for the purpose of ownership of such properties.

4.     The Court further finds that a field road was built to the west of the power line poles. Further, the Caldwells and their tenants had unhindered use of the field road to access the Caldwell Property for cultivation and to access the water wells that were drilled since the mid 1960s.

5.     In addition, the Court finds that the tenant farmers did not ask permission of the deYamperts to use the field road. As a result, the Caldwells and their tenants acquired a private way by prescription for use of the field road to access the Caldwell Property for cultivation and access to the water wells prior to the purchase of the deYampert property by the United States.

6.     The Court finds that the description of the field road is described as follows:

> A tract of land being part of Section 28, Township 18 South, Range 05 West of the Fifth Principal Meridian, Ashley County, Arkansas, as shown on the General Land Office plat from the Surveyor's Office in Little Rock, Arkansas dated September 30th, 1842, being more particularly described as follows:
>
> COMMENCING at a set 3/4-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" set by Robert S. Shotts, PLS 1208, having Arkansas State Plane (South Zone 0302), NAD 83 (2011) (EPOCH: 2010.0000), U.S. Foot Coordinates North: 1475882.380, East: 1430010.440 and Latitude: 33 degrees 06 minutes 55.80 seconds, Longitude: 91 degrees 36 minutes 56.55 seconds;
> Thence on a grid bearing along the north line of said Section 28 North 88 degrees 29 minutes 54 seconds West a distance of 66.73 feet to a set 3/4-inch by 36-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" for the point of BEGINNING;
> Thence South 00 degrees 16 minutes 53 seconds East a distance of 3974.56 feet to a set 3/4-inch by 36-inch rebar with a 2-1/2-inch aluminum cap stamped "U.S. Fish & Wildlife Service" on the south line of the North Half of the Southeast quarter of said Section 28;
> Thence North 88 degrees 36 minutes 46 seconds West a distance of 22.32 feet along the south line of said of said North Half of the Southeast Quarter to a set 5/8-inch by 24-inch rebar on the centerline of a road;

        Thence continuing North 88 degrees 36 minutes 46 seconds West a distance of 10.01 feet;
        Thence North 01 degrees 24 minutes 45 seconds West a distance of 562.30 feet;
        Thence North 00 degrees 09 minutes 21 seconds West a distance of 309.17 feet;
        Thence North 03 degrees 23 minutes 11 seconds East a distance of 111.84 feet;
        Thence North 00 degrees 46 minutes 39 seconds West a distance of 378.98 feet;
        Thence North 04 degrees 59 minutes 51 seconds West a distance of 90.84 feet;
        Thence North 06 degrees 41 minutes 34 seconds East a distance of 145.79 feet;
        Thence North 00 degrees 16 minutes 01 seconds West a distance of 878.35 feet
        Thence North 00 degrees 22 minutes 47 seconds West a distance of 942.56 feet;
        Thence North 00 degrees 02 minutes 38 seconds East a distance of 398.31 feet;
        Thence North 05 degrees 46 minutes 21 seconds West a distance of 124.21 feet;
        Thence North 17 degrees 19 minutes 37 seconds East a distance of 36.18 feet to the North line of said Section 28;
        Thence South 88 degrees 29 minutes 54 seconds East a distance of 10.39 feet along said North to a set 5/8 inch by 24 inch rebar on the centerline of a road;
        Thence continuing along said North line South 88 degrees 29 minutes 54 seconds East a distance of 18.33 feet to the point of beginning.
Said tract contains 3.03 Acres.

13.     The Court further finds that the Caldwells and their tenants are obligated to repair and maintain said field road in a proper condition. However, the Caldwells and their tenants shall notify the FWS designated representative and shall schedule said repairs and maintenance in a manner and at such times as approved by the designated FWS representative.

14.     The Court's opinion only finds that the Caldwells and their tenants acquired a private way by prescription for use of the field road to access the Caldwell Property for cultivation

and access to the water wells.  The opinion does not determine what right a member of the public would have, if any, to use this field road.

15. The Court further finds all parties shall bear their own fees and costs.

A judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 20th day of November, 2018.

/s/ Susan O. Hickey  
Susan O. Hickey  
United States District Judge